USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 05/16/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- X
SOROS FUND MANAGEMENT LLC,             :
                                       :
                Plaintiff,             :
                                       :
    -against-                          :    No. 17 Civ. 3187 (JFK)
                                       :    **OPINION & ORDER**
TRADEWINDS HOLDINGS, INC., and         :
COREOLIS HOLDINGS, INC.                :
                                       :
                Defendants.            :
------------------------------- X

**JOHN F. KEENAN**, United States District Judge:

On May 1, 2017, Soros Fund Management LLC ("SFM LLC" or the "Plaintiff") filed a complaint seeking a preliminary and permanent injunction to enjoin TradeWinds Holdings, Inc. ("TW Holdings") and Coreolis Holdings, Inc. ("Corelois," and, collectively, the "Defendants") from pursuing an action pending in North Carolina state court. Plaintiff also requested declaratory relief. The Court held a hearing on May 8, 2017, and issued an order denying Plaintiff's request for injunctive relief on May 9, 2017. This Opinion reflects the Court's reasons for that denial.

### I. Background

The parties (and related entities) have a complex litigation history, with which familiarity is presumed. For the sake of context, the Court provides a short summary of the relevant proceedings. The facts below are drawn from the

1

complaint and the Court's previous decision in TradeWinds Airlines, Inc. v. Soros, 101 F. Supp. 3d 270 (S.D.N.Y. 2015).

## A. The Parties

Plaintiff is an investment advisory firm organized as a limited liability company under Delaware law. (Compl. ¶ 3.) All of Plaintiff's members—George Soros, Robert Soros, and Jonathan Soros—are citizens of the state of New York. (Id.) TW Holdings is a Delaware corporation with its former principal place of business in North Carolina. (Id. ¶ 4.) Coreolis is a Delaware corporation with its principal place of business in California. (Id. ¶ 5.) Coreolis owns TW Holdings, which, in turn, owns TradeWinds Airlines, Inc. ("TW Airlines"). (Id.) According to the parties, TW Airlines is a Chapter 7 debtor in bankruptcy proceedings pending before the Bankruptcy Court for the Southern District of Florida. (Tr. of Hr'g at 11, 29.)

Although not a party to the instant action, C-S Aviation Services, Inc. ("C-S") is a key player in the history of this litigation. Incorporated under Delaware law in 1994, C-S was a management company for an aircraft leasing business from which Defendants and TW Airlines leased aircraft. See TradeWinds Airlines, Inc. v. Soros, 101 F. Supp. 3d 270, 273, 277 (S.D.N.Y. 2015). Its sole shareholder until at least July 2003 was Purnendu Chatterjee, Mr. Soros' frequent business partner. Id. at 273.

## B. Procedural History

### 1. The North Carolina Action

In 2003, Deutsche Bank, as successor in interest to the owners of a fleet of commercial aircraft, sued TW Airlines and Defendants in North Carolina state court (the "North Carolina Action"). (Compl. ¶ 10.) TW Airlines and Defendants counterclaimed, asserting that C-S had fraudulently induced TW Airlines to sign the leases. (Id. ¶ 11.) Deutsche Bank, Defendants, and TW Airlines ultimately settled the claims at issue in the North Carolina Action, but C-S failed to appear, since having gone out of business. (Id. ¶¶ 12-13.) A default was entered against C-S in 2004. (Id. ¶ 13.)

In 2008, TW Airlines obtained a default judgment against C-S and sued Mr. Soros and Mr. Chatterjee in a veil-piercing action in the Southern District of New York. (Id. ¶¶ 14-15.) In 2010, a North Carolina state court entered default judgments against C-S in favor of (1) Coreolis and TW Holdings, and (2) TW Airlines.[1] (Id. ¶ 16.) Coreolis and TW Holdings subsequently commenced a veil-piercing action in the Southern District of New York against Mr. Soros and Mr. Chatterjee, alleging that they were C-S' alter egos and responsible for its debts. (Id. ¶ 17.)

---

[1] The 2008 default judgment against C-S had been vacated in 2009. (Compl. ¶ 16.)

3

## 2. The SDNY Action

In TradeWinds Airlines, Inc. v. Soros, 101 F. Supp. 3d 270 (S.D.N.Y. 2015) (the "SDNY Action"), the Court granted summary judgment for Mr. Soros and Mr. Chatterjee, whom Defendants and TW Airlines alleged were C-S' alter egos and should be held liable for the unsatisfied default judgment they held against C-S in the wake of the North Carolina Action. The Court rejected Defendants and TW Airlines' arguments that the corporate veil of C-S should be pierced as to Mr. Soros and Mr. Chatterjee, finding that "the absence of evidence suggesting a 'mingling of the operations' of C-S Aviation and Soros and Chatterjee is fatal to Plaintiffs' claims." TradeWinds, 101 F. Supp. 3d at 279. As relevant here, the Court explained:

> Consideration of the evidence Plaintiffs [i.e., Defendants in the instant action] set forth could not lead a rational trier of fact to conclude that there was a 'mingling of the operations' of C-S Aviation and Soros and Chatterjee. At most, the evidence suggests that C-S Aviation may have been intertwined with SFM LLC, the Holding Companies, the Investors, and the SPVs. But given Plaintiffs' theory of this case—that Soros and Chatterjee are C-S Aviation's alter egos— Plaintiffs have advanced no argument and offer no evidence that the corporate forms of SFM LLC, the Holding Companies, the Investors, or the SPVs should be disregarded. Indeed, Plaintiffs specifically argue that this is not a double-veil piercing case.

Id. The Court also observed that "there are no allegations that SFM LLC commingled its finances with" C-S. Id. at 282. The

Second Circuit affirmed the Court's decision in a summary order. See TradeWinds Airlines Inc. v. Soros, 637 F. App'x 53 (2d Cir. 2016).

### 3. The State Court Action

In May 2016, Defendants and TW Airlines brought suit in North Carolina state court (the "State Court Action"), asserting a veil-piercing claim against Plaintiff and seeking to hold it liable as the alter ego of C-S. (Compl. ¶ 20; Klotz Decl. Exs. L, M.)  According to the amended complaint filed in the State Court Action, this Court, in the SDNY Action, found that C-S "was actually controlled during the relevant period by" Plaintiff and that "the record evidence pointed to piercing the veil as to" Plaintiff "rather than the individual principals." (Compl. ¶ 21; Klotz Decl. Ex. M ¶ 6.)  After Plaintiff attempted to remove the State Court Action to federal court in the Middle District of North Carolina in June 2016, the North Carolina federal court granted Defendants and TW Airlines' motion to remand the case to North Carolina state court in March 2017. (Compl. ¶¶ 23, 26.)  Plaintiff was due to answer or move in the State Court Action on May 10, 2017.

### 4. Plaintiff's Request for Injunctive Relief

Plaintiff filed the instant complaint on May 1, 2017, requesting injunctive relief pursuant to the All Writs Act, 28 U.S.C. § 1651, and the Anti-Injunction Act, 28 U.S.C. § 2283,

5

enjoining Defendants from pursuing the State Court Action, as well as a declaratory judgment under 28 U.S.C. § 2201 stating that Plaintiff is not liable for the default judgments Defendants hold against C-S. On May 2, 2017, the Court issued an order to show cause why Defendants should not be enjoined from pursuing the State Court Action.

**II. Applicable Law**

Under the All Writs Act, federal courts have the power to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This power, however, is circumscribed by the Anti-Injunction Act, which limits a federal court's power to enjoin a proceeding in state court. Under the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The authority of a United States court to issue an injunction 'to protect . . . its judgments' from further litigation in state courts is known as the 'relitigation exception' to the broad prohibition of the Anti-Injunction Act." Smith v. Woosley, 399 F.3d 428, 431 (2d Cir. 2005) (quoting 28 U.S.C. § 2283). The relitigiation exception "authorizes an injunction to prevent state litigation

6

of a claim or issue 'that previously was presented to and decided by the federal court.'" Smith v. Bayer Corp., 564 U.S. 299, 306 (2011) (quoting Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147 (1988)).

"Due in no small part to the fundamental constitutional independence of the States," however, "Congress adopted a general policy under which state proceedings 'should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately'" the Supreme Court. Choo, 486 U.S. at 146 (quoting Atl. Coast Line R. Co. v. Locomotive Eng'rs, 398 U.S. 281, 287 (1970)).  Any doubt "as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed."[2] Smith, 564 U.S. at 306 (quoting Atl. Coast Line, 398 U.S. at 297).  In light of these considerations, "every benefit of the doubt goes toward the state court" in determining the propriety of an injunction under the relitigation exception. Id. at 307.

---

[2] Moreover, "deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the second court . . . ." Smith, 564 U.S. at 307 (emphasis in original).

7

**III. Discussion**

In the Supreme Court's most recent decision regarding the Anti-Injunction Act, it articulated a two-part test to determine whether the relitigation exception applies and a federal court injunction of a state court proceeding may issue. See Smith, 564 U.S. at 307-08. "First, the issue the federal court decided must be the same one as the one presented in the state tribunal." Id. at 307. "[S]econd, [the party to be bound] must have been a party to the federal suit, or else must fall within one of a few discrete exceptions to the general rule against binding nonparties." Id. at 308. As to the preliminary inquiry, the issue previously decided by a federal court was not the same one as the issue presented in the state court because the proceedings entailed separate questions regarding the legal standard for class certification under Federal Rule of Civil Procedure 23, on the one hand, and West Virginia Rule of Civil Procedure 23, on the other. Id. at 309-12. Accordingly, the Anti-Injunction Act did not authorize enjoining the state proceeding. Id. at 312.

Previously, the Supreme Court observed that the relitigation exception "is founded in the well-recognized concepts of res judicata and collateral estoppel." Choo, 486 U.S. at 147. "Res judicata, or claim preclusion, bars the revival of claims that already have been litigated." Staffer v.

Bouchard Transp. Co., Inc., 878 F.2d 638, 643 (2d Cir. 1989). Under New York law, "the doctrine of res judicata also operates to preclude litigation of matters that could have or should have been raised in a prior proceeding arising from the same 'factual grouping,' 'transaction,' or 'series of transactions.'" Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) (quoting Bd. of Managers of Windridge Condos. One v. Horn, 651 N.Y.S.2d 326, 327 (N.Y. App. Div. 1996)). Here, Plaintiff argues that the claim Defendants bring against it in the State Court Action is barred by res judicata, and urges the Court to enjoin Defendants from pursuing the State Court Action on that basis. (Pl.'s Mem. at 1, 8-15.)

Plaintiff's argument, however, conflates the applicable standards under the Anti-Injunction Act and the doctrine of res judicata. Second Circuit authority is clear that analysis under the relitigation exception and res judicata is not co-extensive. Under the relitigation exception, the inquiry is narrower and is restricted to only those matters actually decided by a federal court. The Second Circuit instructs:

> [T]he part of the relitigation exception to the Anti-Injunction Act that is based on concerns of res judicata is more narrowly tailored than the doctrine of res judicata. The relitigation exception does not protect the full res judicata effect of a federal court's judgment; rather, it protects only matters that actually have been decided by a federal court.

9

Staffer, 878 F.2d at 643. In Smith, the Supreme Court, articulated a similarly narrow focus.[3] 564 U.S. at 306 ("The provision authorizes an injunction to prevent state litigation of a claim or issue 'that previously was presented to and decided by the federal court.'" (quoting Choo, 486 U.S. at 147)). Courts beyond this Circuit agree. See, e.g., 202 N. Monroe, LLC v. Sower, 850 F.3d 265, 271 n.3 (6th Cir. 2017) ("[R]es judicata generally precludes an issue that 'should have been litigated,' whereas the relitigation exception applies only to those claims or issues that 'actually have been decided.'" (citations omitted)); SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 764 F.3d 1327, 1336 (11th Cir. 2014) ("Whether the principles of claim preclusion may 'inform' one's view of the relitigation exception, the relitigation exception is narrower and only authorizes an injunction to prevent state litigation of a claim or issue that previously was presented to and decided by the federal court." (citation and internal quotation marks omitted)); Fharmacy Records v. Nassar, 806 F. Supp. 2d 1030, 1034 (E.D. Mich. 2011) ("[U]nlike claim and issue preclusion,

---

[3] In Choo, the Supreme Court also addressed the narrow focus of the relitigation exception. "[A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court." 486 U.S. at 148. The Court added: "[T]his prerequisite is strict and narrow." Id.

10

the relitigation exception is tightly circumscribed by overriding tenets of federalism . . . .").

Bearing these principles in mind, the Court concludes that the issue presented in the State Court Action is not the same issue as the one previously decided by this Court. According to Defendants, the issue to be adjudicated in the State Court Action is whether Plaintiff is the alter ego of C-S. (See Defs.' Mem. in Opp'n at 1.) At oral argument, Plaintiff's counsel agreed with that characterization of the issue. (See Tr. of Hr'g at 7.) In contrast, in the SDNY Action, this Court considered and decided not that question, but whether Mr. Soros or Mr. Chatterjee was the alter ego of C-S. See TradeWinds, 101 F. Supp. 3d at 272, 279. Moreover, the Court observed that: "Plaintiffs have advanced no argument and offer no evidence that the corporate forms of SFM LLC, the Holding Companies, the Investors, or the SPVs should be disregarded." Id. at 279. Accordingly, Defendants' argument that the State Court Action does not involve the "same issue" or a matter that "actually [has] been decided" by a federal court is accurate and carries the day. See Smith, 564 U.S. at 308; Choo, 486 U.S. at 148.

Several additional factors counsel against injunctive relief here. First, at oral argument, Plaintiff's counsel acknowledged that, if the injunction were granted, there was a "theoretical possibility of inconsistent rulings" because

11

neither TW Airlines nor C-S are parties to the instant litigation, but both are parties in the State Court Action pending in North Carolina. (Tr. of Hr'g at 13.)  Second, Plaintiff's counsel also acknowledged that satisfactory resolution of all claims by all parties can be achieved in the North Carolina state court. (Id. at 14-15.)  Third, allowing the North Carolina state court to proceed does not alleviate its obligation to consider the preclusive effect of the prior federal judgment. See 202 N. Monroe, 850 F.3d at 273-74.  In applying preclusion principles, the North Carolina state court may well conclude that res judicata, in fact, operates to bar Defendants' claim, but that question is properly left for the state court to determine. See Staffer, 878 F.2d at 643 ("Here, the proper forum for a complete investigation of the res judicata effects of the district court's judgment is the state court, 'which [is] presumed competent to resolve' such matters." (quoting Choo, 486 U.S. at 150)).

Contrary to Plaintiff's argument, the Second Circuit's decision in Wyly v. Weiss, 697 F.3d 131 (2d Cir. 2012), does not compel a different result.  In Wyly, the Second Circuit considered whether, under the relitigation exception, a district court properly enjoined a state court action for legal malpractice. 697 F.3d at 133.  Defendants in the state court action had served as class counsel in a previously settled

12

federal class action suit. Id. at 136. Prior to the filing of the state malpractice action, the district court had approved settlement in the federal class action, as well as an award of attorney's fees to class counsel that it found to be "fair and reasonable." Id. at 141. The subsequent state court claim for legal malpractice required proof of counsel's deficient performance. Id.

The Second Circuit affirmed the district court's decision to enjoin the state court proceeding. In "an issue of first impression," the Second Circuit decided that "the deficient-performance prong of New York's legal malpractice rule is identical to the reasonable-performance issue that the District Court decided." Id. at 141-42. The district court's findings "were possible only if counsel's performance met or exceeded the minimal standards of professional competence—otherwise an award of fees would not have been fair and reasonable in the circumstances." Id. at 142. Accordingly, the Second Circuit concluded that the state court action sought to relitigate the same issue that the district court already resolved.

Here, unlike in Wyly, the question resolved in the earlier federal court action is not a necessary element of a claim brought in a subsequent state court proceeding. Instead, whether Mr. Soros or Mr. Chatterjee is the alter ego of C-S and whether Plaintiff is the alter ego of C-S are distinct

13

inquiries. Although it likely would have been more efficient had Defendants brought their claim against Plaintiff in the SDNY Action, they did not. Nevertheless, the Court is confident that the state courts of North Carolina are competent to evaluate Plaintiff's arguments and determine whether Plaintiff is entitled to any relief. See Choo, 486 U.S. at 150.

## Conclusion

For the reasons stated above, Plaintiff's request for a preliminary or permanent injunction enjoining the proceedings in North Carolina state court is DENIED.

**SO ORDERED.**

Dated:   New York, New York
         May 16, 2017

_____
John F. Keenan
United States District Judge

14